## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2017, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erin L. Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of K.W. (Minor Child)

and

K.W. (Mother),
*Appellant-Respondent,*

v.

Indiana Department of Child Services,
*Appellee-Petitioner.*

December 18, 2017

Court of Appeals Case No.
82A01-1707-JT-1710

Appeal from the Vanderburgh Superior Court

The Honorable Brett J. Niemeier, Judge
The Honorable Renée Allen Ferguson, Magistrate

Trial Court Cause No.
82D04-1612-JT-2164

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent K.W. ("Mother") appeals the juvenile court's order terminating her parental rights to K.W. (the "Child"). On January 12, 2016, Appellee-Petitioner the Indiana Department of Child Services ("DCS") filed a petition alleging that the Child was a child in need of services ("CHINS"). Following an evidentiary hearing, the Child was adjudicated to be a CHINS. Mother was ordered to participate in and complete certain services. Although Mother initially participated in some of the court-ordered services, she has failed to successfully complete them.

[2] DCS filed a petition seeking the termination of Mother's parental rights to the Child on December 12, 2016. Prior to the start of the evidentiary hearing, Mother requested that the hearing be continued indefinitely. Specifically, Mother asked that the evidentiary hearing be continued until some unknown future date so that she could have the opportunity to resolve an ongoing criminal case, complete any sentence related to the ongoing criminal case, and complete services. The juvenile court denied Mother's request and the matter proceeded to an evidentiary hearing. Following the conclusion of the evidentiary hearing, the juvenile court issued an order granting DCS's petition.

[3] On appeal, Mother contends that the trial court abused its discretion in denying her request for a continuance. She also contends that DCS did not provide sufficient evidence to support the termination of her parental rights. We affirm.

## Facts and Procedural History

[4] Mother gave birth to the Child prematurely on December 28, 2015.[1] Mother admitted that she "smoked weed and stuff like that" and drank "alcohol and stuff like that" during her pregnancy. Tr. Vol. II, p. 11. The Child remained hospitalized "for like – at least two weeks" following her birth. Tr. Vol. II, p. 10. Shortly after the Child's birth and while the Child remained hospitalized, DCS became involved with Mother and the Child because Mother "tested positive for opiates and THC[2] upon admission to the hospital" and the Child "tested positive for THC at birth." Tr. Vol. II, p. 48.

[5] On January 12, 2016, DCS filed a petition alleging that the Child was a CHINS. On February 9, 2016, the juvenile court conducted a dispositional hearing, at the conclusion of which it ordered Mother to (1) participate in the CHINS proceedings, (2) cooperate with the assigned parent aid, (3) obtain a substance abuse evaluation and follow any treatment recommendations, (4) participate in nurturing classes, (5) submit to random drug screens, (6) remain

---

[1] The identification of the Child's father is unknown and no individual claiming to be the Child's father participates in this appeal.

[2] THC refers to "tetrahydrocannabinol" which is the "physiologically active component" in marijuana. *See* http://www.dictionary.com/browse/tetrahydrocannabinol (last visited December 6, 2017).

drug and alcohol free, (7) sign releases for all necessary information for DCS and the court-appointed special advocate ("CASA"), (8) comply with daily drop-ins as ordered by the Court, and (9) cooperate with a First Steps evaluation and recommendations for the Child. Despite both Mother and the Child testing positive for drugs, the case remained "an in home CHINS case" until Mother was arrested in February of 2016.[3]

[6] On August 4, 2016, DCS filed a "Verified Information for Contempt" in which it alleged that Mother had failed to comply with the juvenile court's dispositional order by testing positive for alcohol and THC on numerous occasions. Mother admitted to the allegations set forth in DCS's contempt information and claimed to suffer from anxiety. The juvenile court imposed a suspended ninety-day sentence and ordered Mother to seek treatment for her claimed anxiety. The juvenile court informed Mother that if she failed to seek treatment for her anxiety by October 9, 2016, she would be ordered to complete a mental health evaluation. Mother did not seek treatment for her claimed anxiety or complete the ordered mental health evaluation.

[7] On December 12, 2016, DCS filed a petition seeking the termination of Mother's parental rights to the Child. During an April 4, 2017 pre-trial hearing, Mother requested a continuance of the upcoming evidentiary hearing. After

---

[3] Mother was arrested after she "and [her] cousin's baby momma got into it … at [her] granny's crib." Tr. Vol. II, p. 13.

considering the arguments presented by the parties, the juvenile court denied this request.

[8] The juvenile court conducted an evidentiary hearing on DCS's petition on April 17, 2017. During the evidentiary hearing, DCS presented evidence indicating that Mother had continued to engage in criminal behavior and had failed to refrain from drinking alcohol or using illegal drugs. Mother had also failed to obtain employment, obtain suitable housing, or complete necessary services. Given Mother's failures in these regards, the DCS family case manager ("FCM") who was assigned to work with Mother and the Child concluded that termination of Mother's parental rights was in the Child's best interests.

[9] Following the conclusion of the hearing, the juvenile court took the matter under advisement. On June 27, 2017, the juvenile court issued an order terminating Mother's parental rights to the Child. This appeal follows.

# Discussion and Decision

[10] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re*

*T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

# I. Denial of Mother's Request for A Continuance

Mother contends that the juvenile court abused its discretion in denying her motion for a continuance of the evidentiary hearing. "The decision to grant or deny a motion to continue rests within the sound discretion of the juvenile court." *C.T. v. Marion Cty. Dep't of Child Servs.*, 896 N.E.2d 571, 586 (Ind. Ct. App. 2008) (citing *Parmeter v. Cass Cty. Dep't of Child Servs.*, 878 N.E.2d 444, 449 (Ind. Ct. App. 2007)). "Therefore, we will not disturb the court's ruling absent a showing of clear and prejudicial abuse of that discretion." *Id.* (citing *Parmeter*, 878 N.E.2d at 449).

Mother cites to this court's decision in *Rowlett v. Vanderburgh County Office of Family and Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*, in support of her contention that the juvenile court abused its discretion in denying

her request for a continuance.[4]  In *Rowlett*, "we acknowledge[d] that Father requested a continuance because he would still have been incarcerated on the date of the scheduled hearing and recognize[d] that such incarceration was by his own doing."  841 N.E.2d at 619.

> Nevertheless, Father was set to be released only six weeks after the scheduled dispositional hearing.  Further, Father has demonstrated prejudice by the denial of his motion for continuance in that his ability to care for his children was assessed as of the date of the hearing he sought to have continued.  At that time, Father was incarcerated and had not had the opportunity to participate in services offered by the OFC or to demonstrate his fitness as a parent.  The result was that his parental rights were forever and unalterably terminated.  This result is particularly harsh where Father, while incarcerated, participated in numerous services and programs, although offered by the correctional facility and not the OFC, which would be helpful to him in reaching his goal of reunification with his children.

*Id*.  In addition, the children at issue in *Rowlett* had been placed with their maternal grandmother for a period of approximately three years and the plan was for the children to be adopted by their maternal grandmother.  *Id*.  Given that the children had been placed with a relative for a significant period of time

---

[4]  Mother also cites to *In re A.J.*, 881 N.E.2d 706 (Ind. Ct. App. 2008), *trans. denied*, in support of her contention that the juvenile court abused its discretion in denying her request for a continuance.  Mother's reliance on *In re A.J.*, however, is misplaced as it did not involve a motion for a continuance and, despite an observation that perhaps the mother should have been given an additional few weeks to complete the drug treatment program in which she was enrolled before her parental rights were terminated, we affirmed the termination of the mother's parental rights to the children at issue.  881 N.E.2d at 719.

and the plan was for that relative to eventually adopt the children, we concluded that "continuation of the dispositional hearing until sometime after Father was released would have had little immediate effect upon the children." *Id*. The specific facts relied upon in reaching our conclusion in *Rowlett*, however, are easily distinguishable from the facts presented in the instant matter.

[14]  In this case, the record demonstrates that during an April 4, 2017 pre-trial hearing, Mother requested a continuance of the evidentiary hearing which was scheduled to commence on April 17, 2017. In requesting the continuance, Mother's counsel indicated that "[Mother] tells me her next court date is in June. I'm a little unsure as to whether that's a pretrial or an omnibus or if that's an actual trial date."[5] Tr. Vol. II, p. 5. Despite counsel's uncertainty as to when Mother's criminal case might be resolved, counsel asked the juvenile court "to consider a continuance to give [Mother] the opportunity to resolve her criminal case and proceed with services." Tr. Vol. II, p. 5. Counsel for DCS countered that while Mother had been incarcerated since the termination petition had been filed, Mother had "not been in custody the entire time since the inception of the underlying CHINS case … [and had] had quite an

---

[5] In its brief, DCS notes that "The Indiana Department of Corrections public information web-site shows Mother was sentenced in [the criminal case that was pending on the date of evidentiary hearing], served her time, and was released September 15, 2017. http://www.in.gov/indcorrection/ofs/ofs (last visited November 8, 2017)." Appellee's Br. p. 15 n.3. While we are able to verify the information provided in DCS's note as being seemingly accurate, we will not consider such information in resolving this case because the resolution of Mother's then-pending criminal case was unknown to the juvenile court at the time of the evidentiary hearing.

opportunity to participate in services then during the CHINS case." Tr. Vol. II, p. 6. After hearing the parties' arguments, the juvenile court denied Mother's motion.

[15] Review of the record reveals that, unlike in *Rowlett*, Mother's release date was unknown, Mother had been given the opportunity to participate in services prior to her incarceration, the Child was not placed in a relative placement, and the juvenile court was not provided with any evidence that Mother was taking steps during her incarceration to improve her ability to care and provide for the Child. Again, at the time the trial court denied Mother's request for a continuance, the trial court was not presented with any concrete dates by which Mother believed her then-on-going criminal case would be resolved. Mother's counsel indicated that Mother's next hearing in the criminal case was scheduled to occur in June, but counsel did not know whether the June hearing was a pre-trial hearing or a trial date. Mother's request was broad and open ended. Because we believe that the Child's need for permanency[6] outweighed Mother's interest in potentially engaging in services at some unknown time in the future, we conclude that the juvenile court did not abuse its discretion in denying Mother's request for a continuance.

[16] Further, we note that Mother's counsel renewed her request for a continuance at the beginning of the April 17, 2017 evidentiary hearing. DCS again objected

---

[6] DCS indicates that the Child suffers from cerebral palsy and, as a result of her condition, has a heightened need for stability.

to Mother's request. The juvenile court denied Mother's renewed request and moved forward with the evidentiary hearing. It is important to note that in renewing Mother's request for a continuance, Mother's counsel did not provide the juvenile court with any additional information which might have shed light on the timeframe in which Mother hoped to be released from incarceration and to engage in services. As such, we also conclude that the trial court did not abuse its discretion in denying Mother's renewed request for a continuance.[7]

## II. Sufficiency of the Evidence

[17] Mother also contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating her parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the

---

[7] We note that during the evidentiary hearing, Mother indicated that the trial date for her pending criminal case was June 26, 2016. However, when asked when she believed she would be released from incarceration, Mother replied "[i]t's probably gonna be this year, next year, a couple years from now. I don't know." Tr. Vol. II, p. 25. Mother indicated that upon her eventual release, she hoped to live with family and is "gonna be looking for work." Tr. Vol. II, p. 25. DCS, however, expressed concerns about Mother's plan to reside with family, noting that Mother was "a little bit estranged from her family members" because some of her criminal issues "involved family members." Tr. Vol. II, p. 61. All of this information, however, was presented to the juvenile court after Mother's renewed request for a continuance was both made and denied.

evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[18] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[19] In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the
conditions that resulted in the child's removal or the
reasons for placement outside the home of the
parents will not be remedied.
(ii) There is a reasonable probability that the
continuation of the parent-child relationship poses a
threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions,
been adjudicated a child in need of services;
(C)  termination is in the best interests of the child; and
(D)  there is a satisfactory plan for the care and treatment of the
child.

Ind. Code § 31-35-2-4(b)(2).  Mother does not dispute that DCS presented

sufficient evidence to support the first and fourth elements set forth in Indiana

Code section 31-35-2-4(b).  Mother, however, claims that DCS failed to prove

the second and third factors set forth in Indiana Code section 31-35-2-4(b).

## A.  Whether Conditions Will Be Remedied

[20]  On appeal, Mother argues that DCS failed to establish by clear and convincing

evidence both that there is a reasonable probability that (1) the conditions

leading to the Child's removal from her home would not be remedied and (2)

the continuation of the parent-child relationship poses a threat to the well-being

of the Child.  It is well-settled that because Indiana Code section 31-35-2-

4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either*

that (1) the conditions resulting in removal from or continued placement

outside the parents' home will not be remedied, (2) the continuation of the

parent-child relationship poses a threat to the children, *or* (3) the children have

been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See generally In re S.P.H.*, 806 N.E.2d at 882 (providing that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS need only prove and the juvenile court need only find that one of the factors listed in that sub-section is true).

[21] We must note that while Mother asserts that the evidence is insufficient to support the juvenile courts determination that the continuation of the parent-child relationship poses a threat to the Child, Mother presents no argument on appeal in support of this assertion. Mother, therefore, has waived this assertion on appeal. *See N.C. v. Ind. Dept. of Child Servs.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016) (providing that failure to develop a cogent argument results in waiver). Consequently, Mother has, in effect, conceded that the record contains sufficient proof to satisfy the requirements of Indiana Code section 31-35-2-4(b)(2)(B). However, given that this case involves the termination of Mother's parental rights to the Child, we will nonetheless address Mother's claim relating to the sufficiency of the evidence to prove that the conditions which led the Child's removal will not be remedied.

[22]    In order to determine whether the conditions will be remedied, the juvenile court should first determine what conditions led DCS to place the child outside of her parent's care or to continue the child's placement outside her parent's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*; *In re S.P.H.*, 806 N.E.2d at 882. When assessing whether a reasonable probability exists that the conditions justifying the child's removal or continued placement outside her parent's care will not be remedied, the juvenile court must judge the parent's fitness to care for the child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)). The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[23]    Following the evidentiary hearing, the juvenile court determined that DCS presented sufficient evidence to prove that it was unlikely that the reasons for the Child's removal from and continued placement outside of Mother's care would be remedied. In finding that the conditions that led to the Child's removal from Mother's care were not likely to be remedied, the juvenile court indicated that "[t]he Child was removed from the mother's care due to the mother's incarceration for criminal charges and on-going use of drugs and alcohol." Appellant's App. Vol. II, p. 15. The juvenile court found that neither issue had been remedied as Mother had continued both to engage in criminal behavior and to use drugs and alcohol.

[24]    In relation to Mother's criminal behavior, the juvenile court noted that Mother has a "significant history of crimes involving disorderly conduct, drugs, alcohol and domestic violence[.]" Appellant's App. Vol. II, p. 15. The juvenile court detailed Mother's recent criminal history, finding that while pregnant with the Child, Mother was convicted of battery, two separate counts of disorderly conduct, resisting law enforcement, two separate counts of public intoxication, possession of marijuana, and criminal mischief. She was also arrested for harassment and another alleged act of criminal mischief. The juvenile court found that Mother "continued to engage in criminal behavior, domestic violence and drug use" since the Child's birth and during the pendency of the underlying CHINS proceedings. Appellant's App. Vol. II, p. 16. Such was evidenced by Mother's (1) February 27, 2016 arrest and subsequent conviction for Class A misdemeanor battery resulting in bodily injury; (2) October 31, 2016

arrest and subsequent conviction for criminal trespass; (3) December 16, 2016 arrest and subsequent conviction for possession of marijuana; and (4) December 16, 2016 arrest for Level 5 felony domestic battery resulting in serious bodily injury and Level 5 felony domestic battery by means of a deadly weapon. As of the date of the evidentiary hearing, Mother remained incarcerated and had yet to face trial on these last charges.

[25] In relation to Mother's continued use of drugs and alcohol, the juvenile court found that "[a]s part of the CHINS case, and under the Dispositional Order, the mother was ordered to complete a substance abuse evaluation and follow any and all treatment recommendations made by that evaluation." Appellant's App. Vol. II, p. 17. The record reveals that although Mother completed the substance abuse evaluation and attended eight group sessions, she failed to (1) participate fully in some of these sessions and (2) complete the recovery support component. Mother also refused DCS's request that she enter a residential substance abuse treatment program and failed to submit for an ordered mental health evaluation. In addition, Mother continued to abuse alcohol and marijuana throughout the underlying CHINS matter. Mother's continued abuse of alcohol and marijuana is evidenced by the fact that of the thirty-eight random drugs screens to which Mother submitted, seven were positive for THC, seven were positive for alcohol, twenty-two were positive for both THC and alcohol, one was diluted, and only one was negative. Further, when asked whether she believed the conditions that led to the removal of the Child from Mother's care would be remedied, FCM Tarita Moore testified as follows:

"No, I think as long as the drug and alcohol issues exist she will have issues with maintaining housing, employment, so a foundation. She'll have a difficult time establishing a foundation for raising a child[.]" Tr. Vol. II, pp. 55–56.

[26] Given that Mother continued to engage in criminal behavior and to use drugs and alcohol, the juvenile court found as follows:

> 9. [Mother's] continued use of marijuana and alcohol created instability in both employment and housing.
> 10. [Mother's] inability to provide any type of stability was evidenced by her inability to stay out of jail, inability to remain drug and alcohol free, inability to obtain housing, employment, public assistance, a driver's license or transportation. During the pendency of the underlying CHINS matter, [Mother] was only employed for a total of "a couple days" by Evansville Auto Detail. Parent Aide services attempted to assist [Mother] with gaining employment; however; [Mother] was unable to pass any pre-employment drug screens. [Mother] failed to follow through with an employment opportunity at TJ Maxx and believed that the employer did not like her and would not give her a job. [Mother] exhibited this behavior again when attempting to obtain food stamps and simply gave up when asked to provide the required documentation. At times [Mother] did not have the ability to communicate with the DCS because her phone had been shut off. [Mother] provided testimony that she currently "lives at the Vanderburgh County Jail", "has nowhere to live", has had no income, no housing other than living with her Grandmother, no driver's license, no transportation and no job whenever she is released from jail which "could be years".
> 11. Mother has clearly failed to remedy the situation that brought about the removal of [the Child]. Mother's own testimony evidences this fact. Mother continues to be arrested for battery, violent acts against family members and drug possession. [Mother] also continues to use drugs and alcohol as soon as she is released from jail.

12.     Mother's continuing criminal behavior and ongoing use of drugs and alcohol during the pendency of the CHINS case pose a threat to the well-being of the [C]hild.  There is a reasonable probability that continuation of the parent child relationship with [M]other poses a threat to the well-being of [the Child].

Appellant's App. Vol. II, p. 18.

[27]     Mother argues that DCS failed to prove that her "release from incarceration combined with the services she had been successfully participating prior to her incarceration would not remedy the cause for removal of [the Child]." Appellant's Br. p. 15.  In making this argument, however, Mother does not dispute that she committed or was convicted of any of the above-mentioned criminal acts.  Likewise, she does not dispute that she has continued to use alcohol and marijuana.  Instead, Mother merely claims that while she had continued to test positive for alcohol and marijuana throughout the case, "DCS did not present any evidence to show that the positive screens affected [Mother's] ability to parent, rather, and for the court to so find was contrary to the evidence presented at the factfinding hearing."  Appellant's App. Br. p. 16. We cannot agree with Mother in this regard.

[28]     The record reveals that Mother has demonstrated a pattern of both (1) drug and alcohol use and (2) criminal behavior.  Mother has failed to take any steps which would reasonably lead one to believe that she will not continue such behaviors in the future.  Given the record before us, we agree with FCM Moore's opinion that as long as Mother continues to use drugs and alcohol, she will likely struggle provide the Child with either appropriate care or a safe and

stable living environment. As such, upon review, we conclude that the juvenile court did not err in concluding that the conditions leading to the Child's removal from and continued placement outside Mother's care were unlikely to be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997).

## B. Best Interests of the Child

[29] We are mindful that in considering whether termination of one's parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id.* Furthermore, we have previously determined that the testimony of the case worker, a GAL, or a CASA regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id.*; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[30] Here, the juvenile court concluded that the termination of Mother's parental rights would serve the Child's best interests. In reaching this conclusion, the trial court found that "Mother's habitual pattern of drug and alcohol abuse, habitual pattern of criminal behavior, habitual incarceration, lack of employment, inability to remain drug and alcohol free and total instability indicates that maintaining a parent-child relationship with [the Child] is not in the best interests of the [C]hild[.]" Appellant's App. Vol. II, p. 19. This finding is supported by the evidence presented during the evidentiary hearing. It is

further supported by FCM Moore's testimony that she believed that termination of Mother's parental rights was in the Child's best interest.

[31] Mother claims that termination was not in the Child's best interests because she "is not wholly unfit for the very survival of [the Child]." Appellant's Br. p. 16. However, in light of (1) the testimony of FCM Moore, (2) evidence that Mother continues to engage in criminal behavior and use drugs and alcohol, and (3) evidence that Mother lacks the stability necessary to care for the Child, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Mother's parental rights is in the Child's best interests. Mother's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

# Conclusion

[32] In sum, we conclude that the juvenile court did not abuse its discretion in denying Mother's request that the evidentiary hearing be continued until some unknown time in the future when Mother will have had the opportunity to resolve the then-pending criminal case and complete services. We also conclude that the evidence is sufficient to support the juvenile court's order terminating Mother's parental rights to the Child.

[33] The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.